IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**PLEAZE WORKMAN, Administrator of
The Estates of Dixie Workman, Deceased,**

    **Plaintiff,**

v.                                                                        Case No.:  3:15-cv-14327

**THE UNITED STATES OF AMERICA**,

    **Defendant.**

## MEMORANDUM OPINION AND ORDER

Pending is Plaintiff's Motion to Compel. (ECF No. 32). Defendant filed a response in opposition to the motion, (ECF No. 39), and Plaintiff filed a reply memorandum. (ECF No. 41). On May 18, 2016, the undersigned conducted a telephonic hearing and ordered Defendant to produce certain documents for *in camera* review. The documents were produced, and the undersigned has reviewed them. Having now thoroughly considered the issues and the documents, the Court **DENIES** Plaintiff's Motion to Compel for the following reasons.

**I.**     **Relevant Facts**

This civil action arises from a fall suffered by Plaintiff's decedent, Dixie Workman, at the Veterans Affairs Medical Center in Huntington, West Virginia ("HVAMC"). At the time of the fall, Ms. Workman was visiting the HVAMC for purposes of her employment, and fell when exiting the hospital building. Immediately after the fall, Ms. Workman was taken to the HVAMC's Emergency Department by ambulance where she was interviewed,

1

examined, and assessed by nursing staff. (ECF No. 1-1 at 9-15). However, Ms. Workman refused to be treated by the Emergency Department physician and requested transfer to St. Mary's Medical Center. (*Id.* at 9). Accordingly, she was transferred before any physician care was rendered.

In the course of discovery, Plaintiff requested "all reports, incident reports and documents prepared by Defendant regarding Plaintiff's fall." (ECF No. 32-1 at 5-6). In response, Defendant objected on the basis that the discovery request sought documents that were privileged as attorney-client communications, or privileged as patient safety/quality management documents under 38 U.S.C. § 5705, or protected from discovery as attorney work product. (*Id.*). Specifically, Defendant objected to producing a "Patient Fall Report," which had been prepared after Ms. Workman's visit to the HVAMC's Emergency Department. Upon receiving Defendant's response, Plaintiff expressed his disagreement with Defendant's objection, arguing that since Ms. Workman was never a patient of the HVAMC, the Patient Fall Report was not protected under 38 U.S.C. § 5705.

## II. Analysis

Title 38 U.S.C. § 5705 established a statutory privilege from disclosure for all records and documents created by the Department of Veterans Affairs "as part of a medical quality-assurance program." The statute defined a "medical quality-assurance program" as a "systematic health-care review activity carried out by or for the Department for the purpose of improving the quality of medical care or improving the utilization of health-care resources in Department health-care facilities." 38 U.S.C.A. § 5705(c)(1). The statute required the Secretary to prescribe regulations that would identify what specific activities constituted "health-care review activities" entitled to confidentiality. *Id.* at § 5705(d)(1).

Consequently, in 38 C.F.R. §17.501, the Secretary designated four classes of health-care quality assurance review activities entitled to confidentiality, including one broad class described as "monitoring and evaluation reviews conducted by a facility." The regulation made clear that the Under Secretary for Health, the Regional Director, and facility Directors could all identify activities within the classes that qualified as "health-care review activities," as long as they were identified in advance. *Id.* at §17.501(b). In addition, the regulation required the documents and records of health-care activities to have certain characteristics in order to be privileged. In particular:

> (c) Documents and parts of documents generated by activities which meet the criteria in paragraphs (a) and (b) of this section shall be confidential and privileged only if they:
>
> (1) Identify, either implicitly or explicitly, individual practitioners, patients, or reviewers except as provided in paragraph (g)(6) of this section; or
>
> (2) Contain discussions relating to the quality of VA medical care or utilization of VA medical resources by healthcare evaluators during the course of a review of quality assurance information or data, even if they do not identify practitioners, patients, or reviewers; or
>
> (3) Are individual committee, service, or study team minutes, notes, reports, memoranda, or other documents either produced by healthcare evaluators in deliberating on the findings of healthcare reviews, or prepared for purposes of discussion or consideration by healthcare evaluators during a quality assurance review; or
>
> (4) Are memoranda, letters, or other documents from the medical facility to the Regional Director or VA Central Office which contain information generated by a quality assurance activity meeting the criteria in § 17.501 (a) and (b); or
>
> (5) Are memoranda, letters, or other documents produced by the Regional Director or VA Central Office which either respond to or contain information generated by a quality assurance activity meeting the criteria in § 17.501 (a) and (b).

*Id.* at §17.501(c).

On November 7, 2008, the Department of Veterans Affairs, Veterans Health Administration ("VHA") issued a Directive identifying various health-care review activities that fell within the classes and subclasses listed in 38 C.F.R. §17.501.[1] (ECF No. 39-1 at 6-12). Of relevance here, one such activity that fell within the class of "monitoring and evaluation reviews conducted by a facility" was the monitoring and evaluation of "adverse events and close call reporting." (*Id.* at 7-8). For examples of adverse events that required review and reporting, the Directive referred facilities to VHA Handbook 1050.01, which stated that "common adverse events include: patient falls, adverse drug events, procedural errors or complications, and missing patient events." *See* VHA Handbook 1050.01. Definitions.

Accordingly, based upon the 2008 national directive issued by the VHA, a VAMC's quality assurance records and documents related to patient falls are part of the monitoring and evaluation of adverse events, which, in turn, are statutorily privileged health-care review activities. Thus, the HVAMC's quality assurance documents and records related to its patient falls are privileged and may not be compelled in discovery. *See Pettit v. United States,* No. 2:13cv253, 2015 WL 3631647, at *2 (N.D. Ind. Jun. 10, 2015) (finding patient fall report and report of adverse event to be privileged based upon similar policies created at facility level). Here, the HVAMC's Patient Fall Report form undoubtedly was created as a tool to monitor and evaluate patient falls pursuant to VHA directives. In fact, the form itself expressly refers to a predecessor directive as one basis for its confidentiality. The form was intended for a health-care quality assurance purpose

---

[1] VHA Directive 2008-077 "Quality Management (QM) And Patient Safety Activities That Can Generate Confidential Documents." (Nov. 7, 2008). Although the directive was supposed to expire on November 30, 2013, Defendant confirms by affidavit that the directive was in effect at the time of Ms. Workman's fall and remains in effect today. (ECF No. 39-1 at 2).

4

and clearly serves that purpose. For that reason, the undersigned finds that the HVAMC's Patient Fall Report form is a privileged document under 38 U.S.C. § 5705.

Nevertheless, Plaintiff claims that the privilege does not apply in this case, because Ms. Workman's form was not completed for "the purpose of improving the quality of medical care or improving the utilization of health-care resources in Department health-care facilities," and only documents created for those purposes are entitled to protection from discovery. Plaintiff contends that Ms. Workman was never a patient of the HVAMC. She was a visitor before her fall, and she refused care and asked to be transferred to another facility after her fall. Given that Ms. Workman did not receive medical care, Plaintiff argues that her Fall Report did not serve a quality assurance purpose and, thus, is not privileged. While there is some logic to Plaintiff's argument, the argument fails for two reasons. First, Ms. Workman did receive health-care services in the Emergency Department related to a fall. Even though the care was not provided by a physician, professional services subject to peer review and quality management oversight were provided; therefore, Ms. Workman was a patient of the HVAMC despite the limited contact. Second, Plaintiff's argument is premised on a characterization of health-care quality assurance activities that is simply too constrained.

While review of medical services is one way to effect improvement in health care, equally important is gathering data to track and trend. From data tracking and trending, patterns emerge, which can identify risks and areas of weakness in the health care continuum, ultimately leading to changes that improve the quality of medical care rendered at a facility. Having reviewed the additional documents supplied by Defendant, including Ms. Workman's Patient Fall Report, it is plain that the Patient Fall Report created by the HVAMC was designed to allow for both individual review of patient care

5

and for data tracking and trending.[2] Moreover, the HVAMC decided well in advance of Ms. Workman's fall to require its health care staff, as part of the facility's adverse event monitoring and evaluation process, to prepare a Patient Fall Report on any individual that received professional health care services from the HVAMC as a result of a fall, regardless of where the individual fell and regardless of whether any *physician* treatment was rendered to the individual. Indeed, the Patient Fall Report form anticipates that the person who fell may not be, at the moment of the fall, a patient of the HVAMC, as the form includes a "yes/no" box to indicate if the "patient" (person who fell) fell somewhere other than on HVAMC premises or outside of the home (if a homebound patient). Moreover, the Patient Fall Report anticipates that the person who falls may not actually receive treatment from a physician, and includes a box to indicate if no physician treatment is rendered to the patient. In conducting quality assurance, the absence of treatment is often just as important to the analysis as are the nature and extent of treatment rendered.

The evidence submitted by Defendant indicates that a Patient Fall Report is completed whenever a person presents to, or is in, an HVAMC facility requiring care related to a fall. By presenting to the Emergency Department and undergoing a nursing assessment and interview, Ms. Workman triggered creation of a Patient Fall Report. The information gathered on Ms. Workman's Patient Fall Report was then available for review of the quality of the professional services provided to Ms. Workman, and was also available to be used in conjunction with information gathered from other Patient Fall Reports for tracking and trending purposes. (ECF No. 39-1 at 3). As Defendant's Patient

---

[2] Ms. Workman's Patient Fall Report meets the requirements of 38 C.F.R. §17.501(c) as it does explicitly identify the patient, as well as the practitioners providing care.

Safety Manager explained, a Patient Fall Report has multiple uses; and all of those uses fall squarely within the scope of quality assurance activities, because the ultimate goal of the Report is to improve the quality and safety of health care services offered at the HVAMC. Therefore, the Court finds that Ms. Workman's Patient Fall Report is privileged under 38 U.S.C. § 5705 and need not be produced.

Finally, the undersigned notes, as the court did in *Pettit,* that Ms. Workman's Patient Fall Report does not contain any factual information that is not already available to Plaintiff from another source. Accordingly, Plaintiff should rest assured that he is not being deprived of any key evidence as a result of this ruling.

The Clerk is instructed to provide a copy of this Order to counsel of record.

**ENTERED**: June 13, 2016

_____
Cheryl A. Eifert
United States Magistrate Judge