IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

PLEAZE WORKMAN, Administrator of
the Estate of DIXIE WORKMAN, Deceased,

                Plaintiff,

v.                                        CIVIL ACTION NO. 3:15-14327

THE UNITED STATE OF AMERICA,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is the Government's Motion to Dismiss and/or for Summary Judgment. ECF No. 79. The Court held oral argument on the Government's motion on January 30, 2017. Following oral argument the Court issued an order staying the case pending the final determination of the motion in this Memorandum Opinion and Order. ECF No. 94. The Court now **GRANTS** the Government's motion for summary judgment.

Plaintiff Pleaze Workman, the administrator of his deceased wife's estate, brought suit against the United States for the wrongful death of Ms. Workman that resulted when she tripped and fell from a step at the Huntington, West Virginia Veterans Affairs Hospital ("HVAMC"), leading to her death during an operation to repair her injured knee. The United States avers that it is immune from suit in this case because the discretionary function exception to the Federal Tort Claims Act applies ("FTCA"). The Court agrees.

**I.    Background**

On August 5, 2014, Dixie Workman delivered a blood sample from a patient of her employer to HVAMC. Ms. Workman entered the building through the an entrance known as the

"Kennedy steps" entrance because of a 1960 photo depicting President Kennedy addressing a group seated on those steps. The entrance is also known as the entrance to building No. 1 and was the main entrance to the building when it opened in 1932. The facility now has a different main entrance, which is handicapped accessible and located to the left of the Kennedy steps entrance.

 At the top of the Kennedy steps there is a landing on to which the door to the facility opens. The door to the facility is slightly higher than the landing, and there is a single stone step on top of the landing and level with the threshold of the door for use when entering and exiting through that entrance. It is not clear exactly when the step was installed, but it was installed during the late 1970's at the earliest and the late 1980's at the latest as a part of a larger restoration project that returned the landing and steps below it to its original 1932 design. The step, however, was not part of the original design. It was added to make entering and exiting the facility safer.

 Ms. Workman used the Kennedy steps entrance to exit the building. Letters rendered in white are emblazoned on the interior of the door leading to the Kennedy steps and read "PUSH." Another sign just above that reads "CAUTION STEP DOWN" also in white lettering. Ms. Workman, however, slipped and fell as she crossed the threshold purportedly because she stepped over the stone step. Mr. Workman alleges that Ms. Workman fractured her patella because of her fall. While Ms. Workman was having reparative surgery on her patella, her heart stopped and she died.

 Mr. Workman's administrative tort claim was denied on October 9, 2015. Mr. Workman subsequently brought this suit claiming that the Government negligently designed the step and landing in violation of building codes and negligently failed to warn of the unsafe step and landing. The Government argues that this Court lacks jurisdiction over this suit because its design of the

step and warning sign fall within the discretionary function exemption of the FTCA, and it is therefore immune from liability.

In the course of deciding this motion the Court used facts not present in the original pleadings. Accordingly, the Court will treat the Motion to Dismiss and/or for Summary Judgment as a motion for summary judgment.

## II.     Legal Standard

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. There are no disputes as to material facts in this case and the outcome rests on a legal determination. Thus, summary judgment

is proper in this case.

### III. Analysis

"As a sovereign, the United States is immune from all suits against it absent an express waiver of its immunity." *Welch v. United States*, 409 F.3d 646, 650 (4th Cir. 2005). The terms of the United States' consent to be sued may not be inferred but rather must be "unequivocally expressed." *United States v. White Mountain Apache Tribe,* 537 U.S. 465, 472 (2003) (quoting *United States v. Mitchell*, 445 U.S. 535, 538 (1980)). Thus, all waivers of immunity are strictly construed in favor of the United States. *Welch,* 409 F.3.d at 650.

Pursuant to the Federal Tort Claims Act, the United States may be liable in tort "in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages." 28 U.S.C. § 2674. This is an explicit waiver, and a rather broad one, but it is tempered by a number of exceptions. *See* 28 U.S.C. § 2680. One of the more commonly invoked exceptions is for discretionary functions of the government, found at 28 U.S.C. § 2680(a). This provision provides,

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

*Id.*

The discretionary function exemption "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. S.A. Empresa de Viacao*

*Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808 (1984). Congress implemented the exception "to prevent judicial 'second guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Baum v. United States*, 986 F.2d 716, 719 (4th Cir. 1993) (quoting *Varig Airlines,* 467 U.S. at 814). This exception was one of the steps taken by Congress "to protect the Government from liability that would seriously handicap efficient government operations." *Id.*

Applying the discretionary function exception to the myriad government activities is not always an easy task. As guidance the Supreme Court has developed a two part test. *See Berkovitz v. United States*, 486 U.S. 531 (1998); and *United States v. Gaubert*, 499 U.S. 315 (1991). The first inquiry asks whether the governmental action involved "an element of judgment or choice." *Baum*, 986 F.2d at 720 (citing *Berkovitz* 486 U.S. at 536; *Gaubert*, 499 U.S. 315). This requirement of a judgment or choice is not met if a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow" because in that case "the employee has no rightful option but to adhere to that directive." *Gaubert*, 499 U.S. at 322 (citing *Berkovitz*, 486 U.S. at 536). If the first stage of the test is met, the second inquiry centers on whether the judgment exercised, "is of the kind that the discretionary function exception was designed to shield." *Id.* (citing *Berkovitz*, 486 U.S. at 536). Only those actions "based on considerations of public policy" will be protected. *Baum*, 986 F.2d at 720; *Gaubert*, 499 U.S. at 323; *Berkovitz,* 486 U.S. at 537.

A court's considerations of the public policy basis for the government action does not depend on the administrative rank of the person making the decision; even low-level functionaries may consider or implement policy, rendering the action immune. *Wood v. United States*, ____ F.3d ____, No. 15-2106, 2017 WL 35724, at *4 (4th Cir. Jan 4, 2017) (citing *Dalehite v. United States*, 346 U.S. 15, 35–36 (1953)). "It is the nature of the conduct, rather than the status of the actor, that

governs whether the discretionary function exemption applies in a given case." *Gaubert*, 499 U.S. at 325.

Workman concedes that there is no statute, regulation, or policy that specifically prescribed either the installation of the step or the sign, or the design of both. The Court therefore focuses its analysis on the second prong of the *Gaubert* test—whether the Government's actions were based on considerations of public policy. The Court finds that they were and the Government is entitled to immunity.

Taking the entrance step first, the design decisions made by the Department of Veterans Affairs ("VA") in the construction the step required the VA to weigh considerations about cost, safety, aesthetics of a historical building, and design. "It is precisely this type of decision which Congress intended to shield from liability because where there is room for policy judgment and decision, there is discretion." *Bowman v. United States*, 820 F.2d 1393, 1395 (4th Cir. 1987) (quoting *Dalehite*, 346 U.S. at 73). The VA was obliged to weigh incommensurate and competing values like cost, aesthetic faithfulness to an historic building, and safety in the design of the step, necessitating the use of its discretion to balance these competing values *See Shanksy v. United States*, 164 F.3d 688, 694 (1st Cir. 1999) (finding the National Park Service's decision to faithfully restore an historic trading post and forgo certain safety features like guardrails and signs was a fully discretionary judgment that balanced incommensurable values).

The choice to make the step a particular height and length, and of a particular material, unlike choices to maintain the step once it is in place, implicates policy considerations. Indeed, "[o]ne can argue that another policy, which places greater emphasis upon safety, is more desirable. However by the discretionary function exemption, Congress intended to prevent courts from second-guessing federal policy." *Bowman*, 820 F.2d at 1395. Accordingly, the Court declines to

second-guess the VA's design decisions. The design of the step is immune from liability as it falls within the discretionary function exemption of the FTCA. *See* 28 U.S.C. § 2680(a); *Chantal v. United States*, 104 F.3d 207, 213 (8th Cir. 1997) (finding the design of steps leading to the Jefferson National Expansion Memorial National Historic Site in St. Louis, Missouri, discretionary and therefore immune from a slip-and-fall case challenging the design of the steps as unsafe).

Turning now to the sign warning of the step outside the door, the Court finds the design of the sign was discretionary and therefore immune. Just as the design of the step implicated competing policy concerns that called for the use of discretion to determine the ultimate design, so did the design of the warning sign. "[T]he decision to warn of potential danger is a protected discretionary function." *Rosebush v. United States*, 119 F.3d 438, 443 (6th Cir. 1997); *see also Williams v. United States*, 50 F.3d 299, 310 (4th Cir. 1995) (finding the decision to post warning signs within the purview of the discretionary function exception). Moreover, decisions concerning "language, color, and size of the warning . . . are clearly within the discretion of the [government]" *Jurzec v. Am. Motors Corp.*, 856 F.2d 1116, 1119 (8th Cir. 1988). Thus, not only was the decision to post a sign at all on the door discretionary but so was the design of the sign.

At oral argument and in his briefing Workman relies on two Supreme Court cases, *Indian Towing Co. v. United States*, 350 U.S. 61 (1955); and *Berkovitz*, 486 U.S. 531, as authority for his argument that the Government failed to maintain the entrance in a safe condition. Workman's reliance on both is misplaced. The Supreme Court as well as the Fourth Circuit have determined that *Indian Towing* is not an appropriate source of decisional authority on the discretionary function exception. In *Baum*, the Fourth Circuit observed that the government never presented a discretionary function exception argument to the *Indian Towing* Court. *Baum*, 986 F.2d at 723. Instead, the government advanced an argument based on unique government functions as a source

for immunity. *Id.* Thus, the Court never ruled on whether the maintenance of the light in the lighthouse at issue in *Indian Towing* was a discretionary function. *Id.* "For this reason, subsequent decisions of the Court have all but disavowed *Indian Towing* as authority relevant to the discretionary function exception." *Id.* (citing *Varig Airlines*, 467 U.S. at 812).

The Court is not entirely certain how Workman's argument relates to *Berkovitz* other than in the general sense that it is a case that helps define the contours of the discretionary function exception. The facts of *Berkovitz* are quite dissimilar from the facts presented to the Court here, and for that reason the specific findings in *Berkovitz* supply no support for Workman.

In *Berkovitz* a child was given a polio vaccine that caused his near total paralysis. 486 U.S. at 533. The boy, joined by his parents as guardians, brought suit against the Division of Biologic Standards ("DBS"), Bureau of Biologics ("the Bureau") and the Food and Drug Administration ("FDA") for wrongfully licensing the producer of the vaccine and for wrongfully approving the release of a particular lot of vaccine containing Berkovitz's dose. *Id.* at 539–40. Unlike this case, where no statute or regulation applied, there were two regulatory regimes at issue in *Berkovitz*. *Id.* at 542, 545. The first related to Berkovitz's first allegation which attacked DBS' decision to license the third-party producer without verifying, as regulation required, the product met safety standards imposed by those regulations. *Id.* at 542–43. The Court held quite simply that DBS had no discretion to license a producer without first receiving the proper test data and therefore the discretionary function exception did not apply. *Id.*

Next due to imprecise pleading, the Court construed Berkovitz's other licensing allegation in three possible ways. Berkovitz alleged DBS licensed the vaccine even though it did not comply with regulatory safety standards. *Id.* at 543. The Court believed the allegation could be understood to mean: DBS licensed the vaccine without first making a determination as to whether the vaccine

complied with safety standards; DBS licensed the vaccine without determining whether it complied with safety standards; or DBS made a determination that the vaccine complied with safety standards but the determination was incorrect. *Id.* at 543–44. The Court explained that the discretionary function exception would not apply to the first two readings because in either case DBS had no discretion to make independent policy judgments. *Id.* at 544 Federal regulations required DBS to examine the vaccine and determine its compliance with safety standards. *Id.* As for the third interpretation, the Court opined that it was possible that DBS exercises the type of discretion protected by the exception when it determines whether the vaccine complies with safety standards but with only the complaint before it, the Court left that decision to the district court on remand. *Id.* at 544–45.

The second allegation claimed that the FDA and the Bureau violated a separate set of federal regulations by approving the release of the particular lot of vaccine that contained the dose given to Berkovitz. *Id.* at 545–46. The Court noted that these regulations generally permit the Bureau to "determine the appropriate manner in which to regulate the release of vaccine lots, rather than mandating certain kinds of agency action." *Id.* at 546. The Court opined that the regulatory scheme in *Berkovitz* was similar to that in *Varig Airlines* and thus supported a finding that the exception applied.[1] *Id.* "Given this regulatory context," the Court explained, the discretionary function exception bars any claim that challenges either the policy that prescribes the process to properly release lots of vaccine or decisions made by implementing officials if the policy formulated by the Bureau also allows for independent policy judgments. *Id.* But, if the policy does

---

[1] The *Varig Airlines* Court determined that the discretionary function exception barred a claim challenging the Federal Aviation Administration's decision to establish a spot-check safety program. 467 U.S. at 819–20.

not permit independent policy judgments by implementing officials, the exception would not apply because they do not exercise discretion. *Id.*

Having undertaken a thorough review of *Berkovitz* it appears to the Court that none of the scenarios in which the exception did not apply are applicable to this case. The exception was held inapplicable, meaning immunity did not bar the suit, only where regulation or policy precluded the agency or its officials from exercising independent policy judgments. That is not the case here. In this case, Workman concedes that no statute, regulation, or policy applied to the design of the step or the sign. In other words, the VA's decisions here were purely discretionary and as the Court has already found, are "of the kind that the discretionary function exception was designed to shield." *Gaubert*, 499 U.S. at 322 (citing *Berkovitz*, 486 U.S. at 536). Consequently, the Court finds that none of Workman's arguments dissuade the Court from finding that his claims are barred by the discretionary function exception.

### IV. Conclusion

The Government's motion for Summary Judgment, ECF No. 80, is **GRANTED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: February 3, 2017

ROBERT C. CHAMBERS, CHIEF JUDGE